UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MIZ ENGINEERING, LTD.,           :
                                 :
      Plaintiff,                 :
                                 :
v.                               :
                                 :
MEIR AVGANIM, et al.,            :
                                 :
      Defendants.                :
_____ :         Civil Action No. 2:05cv722
                                 :
NOBLE SECURITY, INC., et al.,    :
                                 :
      Third-Party Plaintiffs,    :
                                 :
v.                               :
                                 :
JANE RATTO, et al.,              :
                                 :
      Third-Party Defendants.    :
_____ :


## OPINION AND ORDER

The Counterclaim Plaintiffs and Third Party Plaintiffs (collectively, "Plaintiffs"), a collection of computer lock distributors and manufacturers, allege that Counterclaim Defendant MIZ Engineering, Ltd. ("MIZ"), along with Third Party Defendants Jane Ratto, Penelope Kane, and Germain DeMartinis (collectively "Defendants"), secretly devised and executed a plan to steal Plaintiffs' business. They claim that this conspiracy, which supposedly involved mail fraud and wire fraud, violated the

Lanham Act, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and a Virginia statute.  Plaintiffs also allege various common law torts.

The Counterclaim Defendants and Third Party Defendants have moved to dismiss the Counterclaim and Third Party Complaint.[1] For the reasons discussed below, the Court **GRANTS** the motion to dismiss Polox Co., Ltd. and Inovetive Locks Ltd. as Third Party Plaintiffs.  The Court **DENIES** the remaining motions.

## I. Facts and Procedural History

Noble Security, Inc. ("Noble") and Inovetive Locks Ltd. ("Inovetive"), respectively based in California and Cyprus, are part of a family of businesses that distributes a particular computer lock, called the axial pin tumbler lock, to large businesses throughout the United States.  This conglomeration, which comprises most of the Plaintiffs, began distributing locks in 1996.  It purchases fully-assembled locks from Guan Gao Co. d/b/a Polox Co., Ltd. ("Polox"), another Plaintiff.  Polox assembles the lock components, which it purchases from manufacturer Ming-Yi Technology Co. ("Ming-Yi").  Ming-Yi produces the axial pin tumbler locks pursuant to a United States patent.

---

[1] The Counterclaim and Third Party Complaint are collectively referred to as the "Pleading."

In 1998, Jane Ratto became a manager of Noble.  In 2003, Noble hired Penelope Kane and Germain DeMartinis as additional managers.  These individuals essentially ran Noble's daily operations.  Its general manager, Meir Avganim, an Israeli national, spent relatively little time at the office.

Ratto, Kane, and DeMartinis stopped working for Noble sometime in the fall of 2005 and formed their own distributorship, JR Marketing, LLC d/b/a Royal Locks, Inc., another Third Party Defendant in this case.  Shortly thereafter, they began purchasing locks from MIZ, a lock manufacturer that claims sole ownership rights to the patent for the lock.[2]  However, their relationship with MIZ was not only that of a purchaser.  With Noble's misappropriated customer list at their disposal, the owners of JR Marketing and MIZ hatched a plan to discredit Noble and its affiliates.

The conspirators asked MIZ's attorneys to execute the scheme through a letter and telephone campaign.  Counsel began writing to and calling Plaintiffs' customers on Defendants' behalf, making various misrepresentations.  The customers were told that Plaintiffs were distributing an infringing product, and that to avoid legal trouble, they should begin purchasing their locks from JR Marketing.  The rapport that Ratto, Kane, and DeMartinis

---

[2] Plaintiffs content that MIZ fraudulently obtained ownership of the patent.

had developed with the customers while at Noble made these falsities all the more convincing.  Many customers threatened to sue Plaintiffs and began buying locks from JR Marketing. Plaintiffs' business withered.

On December 8, 2005, MIZ filed a lawsuit in this Court, seeking to enforce its patent rights against Noble and related entities.  As noted above, Plaintiffs filed a Counterclaim against MIZ.  Noble and three related distributors filed a Third Part Complaint against Ratto, Kane, DeMartinis, and Royal Locks, Inc.

On December 21, 2006, Plaintiffs consolidated the Counterclaim and Third Party Complaint into one Pleading.  The parties to the Counterclaim remained the same, but the litigants named in the Third Party Complaint changed.  Inovetive and Polox joined Noble as Third Party Plaintiffs, and the other three distributors dropped their third party claims.  The Third Party Complaint also substituted JR Marketing as a defendant in place of Royal Locks, Inc.

MIZ filed a Motion to Dismiss Count VII of the Counterclaim, a RICO claim.  (Docket No. 95.)  Ratto and Kane, DeMartinis, and JR Marketing separately filed Motions to Dismiss the Third Party Complaint on identical grounds.  (Docket Nos. 97 (Ratto and Kane), 113 (Germain DeMartinis), 114 (JR Marketing).)  They move this Court to:

(1) drop Inovetive and Polox as Third Party Plaintiffs because they failed to request leave before joining the Third Party Complaint;

(2) dismiss the claims against JR Marketing because Third Party Plaintiffs failed to request leave before adding it as a Third Party Defendant;

(3) dismiss the Third Party Complaint because the Third Party Plaintiffs did not obtain a certificate of authority to transact business in Virginia before filing suit;

(4) dismiss Count I because it fails to state a Lanham Act claim;

(5) dismiss Count VI because it fails to state a Virginia business conspiracy claim; and

(6) dismiss Count VII because it fails to state a RICO claim.[3]

Each argument is discussed below.

## II. Analysis

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "must assume that the allegations of the complaint are true and construe them in the light most favorable to the plaintiff[s]." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1993). The Court will not dismiss a complaint "unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their]

---

[3] The Third Party Defendants also moved this Court to dismiss the Third Party Complaint for lack of personal jurisdiction. (Docket Nos. 97, 113, and 114.) Because jurisdictional discovery is ongoing, the Court will address that issue at a later time.

claim which would entitle [them] to relief."  <u>Conley v. Gibson</u>,
355 U.S. 41, 45-46 (1957).

A.   <u>Leave to Amend Third Party Complaint</u>

Third Party Defendants argue for dismissal of Inovetive and
Polox because they did not request leave to file the Third Party
Complaint.  They also argue that the Court should dismiss JR
Markerting as a Third Party Defendant because Third Party
Plaintiffs failed to request leave before adding it to the
action.  The Court accepts Third Party Defendants' first
argument, but rejects their second argument.

Third Party Defendants argue that the Court's December 1,
2006 Order (Docket No. 89), which granted the Third Party
Plaintiffs leave to file an amended Third Party Complaint, did
not allow Inovetive and Polox to join in Noble's claims.  The
Court agrees with Third Party Defendants.  The December 1 Order
only allowed those persons (i.e., Noble and the three other
distributors) who were already Third Party Plaintiffs to amend
the Third Party Complaint.  Inovetive and Polox did not properly
enter the action, and this Court **DISMISSES** them as Third Party
Plaintiffs.  As a result of this ruling, Noble is, for the
moment, the only remaining Third Party Plaintiff.  However, the
Court **GRANTS** Inovetive and Polox leave to file a motion to
intervene as plaintiffs, pursuant to Rule 24, or for Noble to
file a motion to join Inovetive and Polox as plaintiffs, pursuant

to Rule 19 or 20.

The Court finds Third Party Defendants' second argument unpersuasive, because JR Marketing knew or should have known that Noble intended to name it as a defendant in the Third Party Complaint.  Rule 15(c) allows an amendment to relate back to the date of the original pleading when

> the amendment changes the party or the naming of the party against whom a claim is asserted . . . and . . . the party brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. P. 15(c).  Noble's substitution of JR Marketing in place of its trade name, Royal Locks, Inc., satisfies Rule 15(c)'s criteria.

Noble served the original Third Party Complaint on Royal Locks, Inc.'s representative, who in fact represented JR Marketing.  JR Marketing essentially admits as much in its Motion to Dismiss (Docket No. 114), where it refers to itself as "JR Marketing d/b/a Royal Locks, Inc."  JR Marketing could not have been prejudiced by Noble's correction of the name of this Defendant in the amended Pleading.  The Court therefore **DENIES IN RELEVANT PART** the Motions to Dismiss filed by Ratto and Kane (Docket No. 97), DeMartinis (Docket No. 113), and JR Marketing (Docket No. 114).

B.   Certificates of Authority to Transact Business in Virginia

Third Party Defendants claim that section 13.1-758 of the Virginia Code prohibits Third Party Plaintiffs from bringing suit in the Commonwealth, since none of them have obtained a certificate of authority from the State Corporation Commission to transact business here.  However, this claim is moot.  Noble obtained a certificate on August 24, 2007, and this Court has dismissed Inovetive and Polox from this action.  The Court therefore **DENIES IN RELEVANT PART** the Motions to Dismiss filed by Ratto and Kane (Docket No. 97), DeMartinis (Docket No. 113), and JR Marketing (Docket No. 114).

C.   Count I (Lanham Act)

The Lanham Act, in part, imposes liability on those who:

in connection with any goods or services . . . use[] . . . any . . . false or misleading description of fact, or false or misleading representation of fact which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities . . . of his or her or another person's goods, services, or commercial activities.

15 U.S.C. § 1125(a)(1)(B).  A plaintiff asserting such a claim must establish the following elements:

(1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement [or promotion] about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be

8

> injured as a result of the misrepresentation, either by
> direct diversion of sales or by a lessening of goodwill
> associated with its products.

Scotts Co. v. United Indus. Corp., 315 F.2d 264, 272 (4th Cir. 2002).  Third Party Defendants contend that Count I of the Pleading, an unfair trade practices claim brought under the Lanham Act, is deficient because: (1) Noble must possess a valid, protected trademark to maintain its claim; and (2) the letters mailed and phone calls placed by MIZ's attorneys do not amount to "commercial advertising or promotion."  The Court rejects both of these contentions.

Third Party Defendants premise their first argument on a nonexistent element of the offense.  Though "much of the Lanham Act addresses the registration, use and infringement of trademarks and related marks, 15 U.S.C. § 1125(a) is one of the few provisions [of the Lanham Act] that goes beyond trademark protection."  Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28-29 (2003).  As the elements enumerated above demonstrate, possession of a trademark is irrelevant in asserting a Lanham Act claim based on unfair trade practices such as false advertising.

Third Party Defendants' second argument is premature.  They contend that the letter writing and telephone campaign carried out by Defendants did not reach a large enough audience to satisfy the first element of the statute.  Granted, a number of

9

Courts of Appeal have held that commercial advertising or promotion encompasses only those statements "disseminated sufficiently to the <u>relevant purchasing public</u>." <u>Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics</u>, 859 F. Supp. 1521, 1536 (S.D.N.Y. 1994) (emphasis added); <u>see</u> <u>Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials</u>, Inc., 299 F. Supp. 2d 565, 572 n.2 (Smith, J.) (noting circuit approval). However, the definition of this term — relevant purchasing public — "depends on the number of alleged contacts or misrepresentations made in relation to the total market." <u>Tao</u>, 299 F. Supp. 2d at 573.

While the Pleading does not estimate the number of customers contacted by Defendants, it cannot be said to a legal certainty that the letter writing and telephone campaign did not constitute commercial advertising or promotion.  Noble engaged in wholesale lock distribution to computer giants such as "Dell, Gateway, and Hewlett Packard." (Consolidated Answer to Compl. with Countercls. Including Claims Against Third Parties ¶ 76 [hereinafter "Answer"].)  The Third Party Complaint alleges that Defendants contacted these customers during the course of the conspiracy.  (<u>Id.</u> ¶ 125-26.)  Potential misrepresentations to these companies alone might establish commercial advertising. <u>See, e.g.</u>, <u>Lampi Corp. v. Am. Power Prods.</u>, No. 93 C 1225, 1994 WL 501996, at *2 (N.D. Ill. Sept. 12, 1994) ("[B]oth companies

sell to primarily nationwide chains, so making statements . . .
to representatives of only a few such chains could . . . .
constitute advertising or promotion.")  Discovery is critical to
determine market composition and the breadth of the scheme.  The
Court therefore **DENIES IN RELEVANT PART** the Motions to Dismiss
filed by Ratto and Kane (Docket No. 97), DeMartinis (Docket No.
113), and JR Marketing (Docket No. 114).

D.   Count VI (Virginia Business Conspiracy)

Third Party Defendants also take issue with Count VI, which
alleges a business conspiracy pursuant to section 18.2-499 of the
Virginia Code.  They argue that Noble did not identify the
participants in, nor did it specify the time frame or location
of, the conspiracy.  However, Defendants disregard Count VI's
reincorporation of the allegations contained in previous
paragraphs of the Pleading.  (Answer ¶ 175.)

The conspirators were MIZ and MIZ's owner, Francisco Lu, as
well as Ratto, Kane, and DeMartinis.  (Id. ¶ 86, 176.)  The
conspiracy began during the summer of 2005 and continued through
December 2005, when MIZ filed its Complaint.  (Id. ¶ 109.)  The
conspirators formulated and executed their plan at the office of
MIZ's attorneys in Leesburg, Virginia.  (Id. ¶ 127.)

The incorporated paragraphs contain the information
Defendants seek and touch on each element of the business
conspiracy statute.  See Va. Code Ann. § 18.2-499, -500 (1950)

(holding liable those who conspire to "willfully and maliciously injur[e] another in his reputation, trade, business or profession by any means whatsoever").  The Court therefore **DENIES IN RELEVANT PART** the Motions to Dismiss filed by Ratto and Kane (Docket No. 97), DeMartinis (Docket No. 113), and JR Marketing (Docket No. 114).

E.    Count VII (RICO)

Defendants contend that Plaintiffs' RICO claim does not sufficiently allege: (1) the statutory sub-provision under which they are bringing suit; (2) the predicate acts of mail fraud and wire fraud; and (3) a pattern of racketeering activity. Defendants further argue that Plaintiffs did not plead fraud with the particularity demanded by Rule 9(b).  The Court rejects these arguments.

At its core, a RICO claim consists of four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985); see 18 U.S.C. § 1962 (criminalizing racketeering activity).  Section 1961(1) of Title 18 of the United States Code lists the predicate offenses that qualify as "racketeering activity."  Mail fraud and wire fraud, the racketeering activities that Plaintiffs allege in their Pleading, are two of those offenses.  18 U.S.C. § 1961(1); see 18 U.S.C. §§ 1341, 1343 (criminalizing mail fraud and wire fraud).

1.   <u>Statutory Sub-Provision</u>

Defendants claim that Plaintiffs fail to reference a specific provision of RICO in their Pleading.  While it is true that the Plaintiffs did not cite a particular subsection of the RICO statute, Count VII's parenthetical subtitle says "(*RICO Conspiracy*)."  This subtitle "give[s] the defendant[s] fair notice of what the plaintiff's claim is and the grounds upon which it rests."  <u>Conley</u>, 355 U.S. at 47.  Defendants need not look further than 18 U.S.C. § 1962(d), the RICO conspiracy provision.  

2.   <u>Mail Fraud and Wire Fraud</u>

Mail fraud consists of: (1) "a scheme to defraud;" and (2) the use of the mails for the purpose of executing the scheme."  <u>United States v. Godwin</u>, 272 F.3d 659, 666 (4th Cir. 2001).  The elements of wire fraud mirror those of mail fraud, except that the defendant must utilize a "wire . . . communication," rather than the postal service to effectuate the scheme.  18 U.S.C. § 1343.  The Pleading adequately describes the elements of both offenses.

Plaintiffs contend that Defendants' "letter campaign" tricked Noble's customers into believing they would be sued for patent infringement if they continued to purchase Plaintiffs' locks.  (Answer ¶ 92-93.)  Plaintiffs also contend that

13

Defendants used "telephonic and other electronic means [of] communication" to execute their scheme. (<u>Id.</u> ¶ 103.) These allegations address both elements of mail and wire fraud. Defendants agreed to defraud customers, and did so by mailing letters and placing telephone calls. Whether Plaintiffs can prove these allegations remains to be seen.

That the conspirators intended to defraud third parties, rather than Plaintiffs themselves, is not fatal to Plaintiffs' RICO claim. <u>See</u> <u>Mid Atlantic Telecom, Inc. v. Long Distance Servs., Inc.</u>, 18 F.3d 260, 263 (4th Cir. 1994), <u>cert denied</u>, 513 U.S. 931 (1994). As long as the letter campaign was "purposefully devised" to harm Plaintiffs, a viable claim exists. <u>See id</u>.[4]

    3.   Pattern of Racketeering Activity

Section 1961(5) of Title 18 of the United States Code states that a "pattern" constitutes, at a minimum, "two acts of racketeering activity . . . within ten years" of each other. However, "two acts alone do not necessarily establish a pattern." <u>GE Inv. Private Placement Partners II v. Parker</u>, 247 F.3d 543,

---

[4] The Court is mindful of the recent decision in <u>Anza v. Ideal Steel Supply Corp.</u>, 126 S.Ct. 1991 (2006), where the Supreme Court tightened the degree of causation required between the racketeering activity and a claimant's injury in order to maintain a RICO claim. However, that decision did not speak directly to cases like the instant one, where a claimant alleges that a "RICO defendant attract[ed] customers in ways that involve illegitimate competitive means." <u>Id.</u> at 2011 (Breyer, J., concurring in part).

549 (4th Cir. 2001).  A plaintiff also "must show that the racketeering predicates are related, <u>and</u> that they amount to or pose a threat of continued criminal activity."  <u>H.J. Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 239 (1989) (emphasis in original).

At different points in the Pleading, Plaintiffs allege that Defendants executed their scheme both through the mails and by telephone or electronic communication.  (Answer ¶ 92-92, 103.) Plaintiffs further plead that Defendants performed these acts with one goal in mind — to steal Plaintiffs' customers.  (<u>Id.</u> ¶ 92.)  Plaintiffs have thus alleged a common plan motivating the racketeering activity.

On the other hand, it is more difficult to say that the racketeering activity threatens to extend into the future if left unchecked.  Continuity exists when "it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business."  <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 243 (1989).  Plaintiffs contend that, beginning in summer 2005 and up to the filing of this suit, Defendants carried out their plan to defraud Plaintiffs' customers.  (Answer ¶ 109.) Accepting this allegation as true and viewing it in a light most favorable to Plaintiffs, it cannot be said that Plaintiffs will be unable to show that the threat of Defendants' continued fraudulent activity exists.  Whether Plaintiffs can prove a

15

"pattern of racketeering activity" is a matter best left for the summary judgement stage of this litigation.

4.   <u>Pleading Fraud with Particularity</u>

Finally, Defendants contend that the Pleading does not describe fraud with the specificity demanded by Rule 9(b).  They argue that Plaintiffs have not plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  <u>Harrison v. Westinghouse Savannah Rive Co.</u>, 176 F.3d 776, 786 (4th Cir. 1999).

Defendants lose sight of Rule(9)(b)'s purpose in making their argument.  Rule 9(b) builds upon, but does not displace, Rule 8, which only requires a "short and plain statement of the claim."  Fed. R. Civ. P. 8(a); <u>see</u> <u>Michaels Bldg. Co. v. Ameritrust Co., N.A.</u>, 848 F.2d 674, 679 (6th Cir. 1988).  "When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct."  <u>United States ex rel Bledsoe v. Cmty. Health Sys., Inc.</u>, 2007 WL 2492439, at *6 (6th Cir. Sept. 6, 2007).

The Counterclaim is adequate in this regard.  Plaintiffs have plead the time frame (fall 2005), place (the office of MIZ's attorneys in Leesburg, Virginia), and contents (Plaintiffs were

selling an infringing product) of the false misrepresentations, as well as the misrepresenting parties' identities (Defendants, through MIZ's counsel) and what they obtained thereby (the business of Plaintiffs' customers).

The Court therefore **DENIES** MIZ's Motion to Dismiss Count VII (Docket No. 95).  The Court also **DENIES IN RELEVANT PART** the Motions to Dismiss filed by Ratto and Kane (Docket No. 97), DeMartinis (Docket No. 113), and JR Marketing (Docket No. 114).

### III. Conclusion

For the reasons stated herein, the Court **DENIES** MIZ's Motion to Dismiss Count VII (Docket No. 95).  The Court **GRANTS** Third Party Defendants' portion of the Motion to Dismiss (Docket Nos. 97, 113, and 114) that seeks dismissal of Inovetive and Polox as Third Party Plaintiffs.  Inovetive and Polox are hereby **DISMISSED.**  The Court **DENIES** all other claims contained in the Third Party Defendants' Motion to Dismiss (Docket Nos. 97, 113, and 114).[5]

---

[5] However, the Court will consider the last remaining claim in the Motions to Dismiss, based on lack of personal jurisdiction, at a later time. See supra note 1.

17

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

                                     _____/s/
                                       Walter D. Kelley, Jr.
                                 UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
September 28, 2007